*In re* VÍCTOR RODRÍGUEZ VEGA, JUEZ DE DISTRITO.

*Número:* O-80-70          *Resuelto:* 11 de marzo de 1982

*Héctor A. Colón Cruz, Procurador General, y Eliadís Orsini Zayas, Procuradora General Auxiliar,* abogados promoventes; *Gaspar Rivera Cestero y Juan R. Marchand Quintero,* abogados del promovido.

Sala integrada por su Presidente el Juez Asociado Señor Torres Rigual y los Jueces Asociados Señores Martín y Negrón García.

PER CURIAM:  Previo dictamen emitido por el Juez Asociado Hon. Carlos J. Irizarry Yunqué determinando causa para ulteriores procedimientos, y en virtud de lo

dispuesto en la Ley Núm. 201 de 23 de julio de 1974 (4 L.P.R.A. sec. 232), sobre separación del servicio a los jueces del Tribunal de Primera Instancia, el 11 de febrero de 1980 el Procurador General presentó escrito y solicitó de este Tribunal que separara de su cargo al Juez de Distrito Víctor Rodríguez Vega "por razón de su incapacidad mental". Alegó tal condición a base de varios incidentes en el descargo de su ministerio y de que ello impedía "en forma absoluta desempeñarse en sus funciones". Luego de la contestación del querellado, designamos Comisionado Especial al ex juez Superior José M. Aponte Jiménez y dispusimos, en consideración de la naturaleza de la solicitud, el nombramiento de un panel de peritos psiquiatras y su implementación en armonía con la Regla 13.1(c) de nuestro Reglamento. A tal efecto el panel quedó constituido por los psiquiatras Dr. Ramón Eduardo Alonso Santiago —seleccionado por el querellado Juez Rodríguez Vega—, el Dr. José O. Fernández Cuevas —designado por el Procurador General— y el Dr. Abelardo Martínez Segarra —nombrado por el Comisionado. El Juez Rodríguez Vega fue referido al Dr. José M. Petralanda, sicólogo clínico, y se sometió a distintas pruebas psicológicas. También fue evaluado por los referidos profesionales y se recibió en vista sus testimonios y prueba documental adicional. (¹)

Aquilatada esta evidencia, el Comisionado formuló las siguientes determinaciones:

1. El querellado Víctor Rodríguez Vega, Juez del Tribunal de Distrito de Puerto Rico, fue debidamente examinado

---

(¹) Los informes escritos rendidos por los psiquiatras fueron admitidos sin objeción de las partes. El informe escrito y la declaración prestada por el doctor Petralanda fueron admitidos sobre la objeción del representante legal del querellado, Lic. Gaspar Rivera Cestero. También fueron admitidas una carta cursada por el Lic. Rivera Cestero a "The Catholic University of America" y la respuesta, con la objeción del Procurador General. Dicha prueba documental consigna que el doctor Petralanda no figura en los récords de dicha institución como que haya cursado estudios en la misma.

por el siquiatra, doctor José O. Fernández Cuevas, designado por la oficina del Procurador General, durante los días 16 de marzo y 13 de abril de 1981. El examen practicado al querellado por dicho siquiatra duró cuatro horas en total durante las fechas señaladas.

2. El querellado también fue debidamente examinado por el doctor Abelardo Martínez Segarra, siquiatra designado por el Comisionado Especial, durante los días 31 de mayo y 4, 6, 7 y 10 de abril de 1981, tomando el examen practicado un total de 12 horas. A requerimiento del doctor Martínez Segarra y con el propósito de complementar sus hallazgos, el querellado fue referido por dicho siquiatra al doctor José M. Petralanda, sicólogo clínico, para que le practicase pruebas sicológicas relacionadas con su condición mental.

3. Durante los días 23 de febrero y 2 de abril de 1981, el querellado fue debidamente examinado por el doctor Ramón Eduardo Alonso Santiago habiendo tomado dicho examen un total de cinco horas.

4. A juicio del Comisionado suscribiente todos los testigos que prestaron testimonio están capacitados para declarar como peritos en su materia.

5. A las fechas de los exámenes practicados, el Honorable Víctor Rodríguez Vega, *quien posee un nivel de inteligencia superior al promedio, manifiesta reacciones que demuestran un patrón de comportamiento suspicaz, cauteloso, eminentemente depresivo y receloso con propiedades compatibles con una personalidad paranoide, caracterizadas [sic] por ideas persistentes que pueden ser de persecución.*

6. *Su personalidad denota un comportamiento agresivo verbal, condición ésta que se acentúa al ingerir bebidas alcohólicas. Al así hacerlo genera un patrón de conducta que limita su relación personal y social y podría afectar, lesionar, menoscabar y obstaculizar sus funciones como magistrado.*

7. *El querellado admite un historial de alcoholismo crónico y tener una propensión a tomar bebidas alcohólicas.* A la fecha que fue examinado por los señores siquiatras manifiesta haber dejado de consumir bebidas alcohólicas y no existen señales exteriores que demuestren lo contrario.

8. *Su patrón de comportamiento indica un estado de disfunción en su personalidad, caracterizado por su conducta con ideación suspicaz, recelosa unido a su historial de alcoholismo crónico y rasgos depresivos que requieren intervención y tratamiento siquiátrico.*

9. El juez Víctor Rodríguez Vega, a pesar de sufrir de un desorden [*sic*] en su personalidad, caracterizado por los rasgos y patrón de comportamiento, anteriormente expuestos, posee los mecanismos para conocer y aceptar su condición y la capacidad de juicio para, *en circunstancias normales*, llevar *a cabo sus funciones*. El hecho de haber dejado de tomar bebidas alcohólicas, después de la radicación de la presente querella, refleja que posee esos controles.

10. Para superar su actual condición emocional subyacente, resulta indispensable que no reincida en el uso de bebidas alcohólicas, condición ésta que, para su logro, *requiere y conlleva, necesariamente, que el querellado se someta a un tratamiento siquiátrico adecuado sin el cual su patología o disfunción no estaría totalmente compensada a tal grado que le capacite para realizar sus funciones como juez.*

11. El Comisionado suscribiente estima que la divergencia de criterio entre los señores siquiatras que prestaron testimonio, en cuanto a ciertos aspectos básicos de la capacidad del juez Rodríguez Vega para llevar a cabo sus funciones, se neutraliza si consideramos que el enfoque dado por éstos en sus evaluaciones está ligado a la carencia o presencia de los antecedentes, observaciones, elementos y recuento informativo expuestos por el querellado, a preguntas de los siquiatras, durante las entrevistas sostenidas con cada uno de ellos, por separado, constituyendo la recopilación de dicha data [*sic*] la base fundamental de sus diagnósticos y conclusiones sobre la capacidad del querellado para ejercer sus funciones como juez.

Previa transcripción de la prueba testifical y su notificación a las partes, éstas formularon sus objeciones al informe del Comisionado, comentarios y recomendaciones. Resolvemos.

I

El querellado esencialmente discute que la prueba demostró que está plenamente capacitado para desempeñarse como juez. Aduce que el Procurador General no ofreció evidencia alguna —según éste alegó en la solicitud que se proponía ofrecer sobre— opiniones o inferencias de testigos no peritos que supuestamente ". . . coincidían en que el Juez querellado estaba enfermo, que sus estados de ira e incoherencia verbal eran frecuentes y que constantemente ingería medicamentos y se dijo a continuación que se presentarán opiniones de otros magistrados, de otros abogados y de funcionarios del Tribunal". Argumenta que la tardanza habida en el proceso desde que fue suspendido originalmente de empleo y sueldo el 2 de noviembre de 1979, reinstalado temporalmente el 21 de diciembre, y suspendido nuevamente el 10 de enero de 1980, fueron circunstancias difíciles de "verdadera tortura mental" y material que motivó que uno de los testigos periciales opinara que la sintomatología de reacciones emocionales consistente de tensión, inestabilidad, ansiedad, preocupación, suspicacia, cautela, tristeza y depresión, manifestadas en su examen, ". . . *podrían interpretarse, ¡claro está!, como otros tantos síntomas de un desorden [sic] psiquiátrico de mayor profundidad etiológica y también de mayor severidad pronóstica,* pero que podrían interpretarse de igual modo —como se ha hecho en este caso— como defensas sicológicamente comprensibles ('normales') de un ser humano sometido a un severo y prolongado *stress* en que está en juego su vida profesional y su prestigio personal". (Énfasis suplido.)

En resumen, a lo largo de su escrito el querellado elabora la tesis de que el diagnóstico unánime del panel de peritos en su contra se debió al proceso de separación y no a una condición preexistente. En su apoyo aclara que había dejado de consumir bebidas alcohólicas "más de año y medio antes de ser examinado en febrero y abril de

1981", y objeta las determinaciones respecto a que no está capacitado y requiere intervención y tratamiento psiquiátrico. Impugna también la declaración del testigo Petralanda a base de que no formaba parte del panel y ello infringió la regla, y además, de que fue desmentido sobre haber afirmado que comenzó sus estudios en la Universidad Católica de Washington. Cuestiona además la capacidad pericial del psiquiatra Dr. Fernández Cuevas, a quien debió descartarse por haberle declarado alcohólico *al presente* sin preguntarle si todavía ingería alcohol; que debió sostenerse su capacidad —avalada por el doctor Martínez Segarra— a base del testimonio del Dr. Ramón Alonso Santiago y que las determinaciones en contrario "...carecen de toda base racional en la prueba presentada y son arbitrarias, caprichosas y contrarias al balance más justiciero, racional y jurídico de la totalidad de la evidencia recibida, [y el sostenerlas] causaría al querellado, injustamente, un daño irreparable".

Finalmente expone que una separación "de su cargo al querellado por razón de su incapacidad mental, la cual le impide en forma absoluta, desempeñarse en sus funciones", destruirá toda posibilidad de ejercer como abogado y notario, lo cual equivale a un desaforo, de impacto gravoso sobre su futuro profesional y familiar.

Por su parte, el Procurador General defiende las determinaciones fácticas del Comisionado Especial argumentando que los tres peritos y un sicólogo clínico *básicamente* coincidieron en la conclusión de falta de capacidad y —al igual que el querellado— nos remite a las distintas partes de los testimonios para enfatizar tal posición.

## II

■ El examen cuidadoso e integral de la prueba testifical y documental. tiende a sostener, en sus extremos esenciales, las determinaciones de hecho del Comisionado Especial. Independientemente de que el Procurador Gene-

ral sólo descansara en prueba pericial, existe evidencia sustancial que sugiere concluyentemente que el querellado Rodríguez Vega acusa serios problemas emocionales de personalidad —agravados cuando ingiere bebidas alcohólicas— que resultan incompatibles con el fiel descargo de la función judicial. Es axiomática una personalidad balanceada en todo miembro de la judicatura. Un sentido de prudencia, serenidad, dignidad, dedicación, respeto, cordialidad, sobriedad, temperancia y razonabilidad, unido al tacto de hacer justicia son factores integrantes que deben, en mayor o menor grado, converger y distinguir la persona del juez.

■ No podemos coincidir con su tesis de que los hallazgos de los peritos se debieron al trámite del caso. Ciertamente la labor que realiza un magistrado —en diferentes momentos, formas y circunstancias— está en cierta medida sujeta a tensiones parecidas a las invocadas. Es más, aceptando para fines de discusión la teoría del querellado de que no se demostró su incapacidad *absoluta*, el remedio de separación subsistiría, pues la ley contempla su procedencia por "incapacidad *mental* o física de un juez, *relativa* o absoluta, que *afecte el desempeño de sus funciones judiciales*".([2]) (Énfasis suplido.) En el caso ante nos, aun bajo la visión más favorable al querellado se ha establecido la condición incapacitante *relativa*.

■ La *solución justa* de casos como el presente siempre es penosa. Queda empañada por el impacto que una decisión en su contra pueda tener sobre el potencial del querellado para dedicarse al ejercicio de la profesión de abogado. Aunque nos preocupa, ello no puede ser elemento determinante que afecte el cumplimiento de nuestra misión. Basta aclarar que no prejuzgamos la cuestión.

---

([2]) Notamos que los conceptos de "incapacidad mental o física" —sea relativa o absoluta— necesariamente no excluyen situaciones claras de manifiesta incompetencia e inhabilidad profesional reflejada en el ejercicio del cargo.

Precisamente la ley que nos ocupa concibió —conforme su exposición de motivos— que "[d]istinto a las causas de destitución —que implican situaciones en que está envuelta la integridad personal o la negligencia de un magistrado— el concepto de separación del servicio excluye esencialmente criterios de culpa o negligencia, ... atribuyéndole a ésta efectos idénticos a una renuncia voluntaria".

En conclusión, al amparo del mandato de ley, cabalmente se han cumplido los requisitos procesales y sustantivos para que el Juez de Distrito Víctor Rodríguez Vega sea separado permanentemente de su cargo. Esta separación operará ". . . a todos los efectos y consecuencias legales, como una renuncia voluntaria y no afectará los derechos adquiridos del juez o aquellos derechos que sobrevinieron como resultado de tal determinación bajo las disposiciones de la Ley de Retiro de la Judicatura".

*Se dictará la correspondiente sentencia.*

